**SO ORDERED.**

**SIGNED this 27 day of February, 2014.**

_____
**Randy D. Doub
United States Bankruptcy Judge**

---

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

IN RE:

REBECCA ANN YOUNGKIN                                    CHAPTER 7
                                                        CASE NO.  12-08391-8-RDD
    DEBTORS

ORDER GRANTING MOTION FOR SANCTIONS
FOR VIOLATION OF DISCHARGE INJUNCTION

Pending before the Court is the Motion For Section 362(k) Sanctions filed by Rebecca Ann Youngkin (the "Debtor") on September 18, 2013, (the "Motion")[1] and the Response In Opposition To Debtor's Motion For Section 362(k) Sanctions filed by Green Tree Servicing, LLC ("Green Tree") on October 22, 2013 (the "Response"). The Court conducted a hearing on February 5, 2014, in Greenville, North Carolina to consider the Motion and the Response.

**BACKGROUND**

The Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on November

---

[1] While the Motion is titled "Motion For Section 362(k) Sanctions", the Debtor also requests sanctions for violation of the discharge injunction.

1

29, 2012. The Debtor received her discharge on March 7, 2013 ("Exhibit K"). Green Tree, as successor in interest to Flagstar Bank ("FSB"), was scheduled as a secured creditor by virtue of a promissory note in the original principal amount of $189,000.00 dated May 26, 2006 (the "Note") and secured by a deed of trust (the "DOT") against the real property located at 435 Sandy Cross Rd., Hobbsville, North Carolina (the "Property"). The Notice of Meeting of Creditors was mailed to all creditors by the U.S. Bankruptcy Court on December 2, 2012 ("Exhibit A"). The Chapter 7 Individual Debtor's Statement of Intention dated November 19, 2012, filed December 3, 2012, and served on Flagstar Bank on November 29, 2012, noted that the Debtor was surrendering the Property ("Exhibit B").

In January of 2013, FSB assigned the Note to Green Tree, secured by the DOT on the Property. On January 22, 2013, the Court entered an Order Granting Relief from Automatic Stay ("Stay Relief Order") whereby FSB, predecessor in interest to Green Tree, obtained relief from the automatic stay in order to allow it to pursue foreclosure of its lien against the Property. The Stay Relief Order provides, in pertinent part:

> . . . the stay against FSB is terminated immediately and the waiting period of FRBP 4001(a)(3) does not apply so that FSB, its successors or assigns, may enforce the lien of the Deed of Trust in the original amount of $189,000.00 dated May 26, 2006, and recorded in Book 246, Page 231 Gates County Registry, North Carolina, and collect or recover the indebtedness thereby secured, by foreclosure or by any other action which may be available to them with respect to the property described therein or with respect to the proceeds of any sale thereof and is allowed, pursuant to 11 U.S.C. § 506(b), to assess $676.00 to the mortgage account for expenses in filing the Motion for Relief. (See Exhibit C.)

A letter dated January 22, 2013, from Green Tree was received by J. Allen Murphy (the "Debtor's Attorney") in regard to the Property and the Note, asking whether the Debtor wished to retain the Property and enter into a Reaffirmation Agreement ("Exhibit D"). A letter dated January

31, 2013, from the Debtor's Attorney was received by Green Tree returning the Reaffirmation Agreement and indicating that the Debtor was surrendering the Property ("Exhibit E").

A letter dated February 1, 2013, from Green Tree was received by the Debtor disclosing rights under federal law for the cancellation or termination of the private mortgage insurance ("PMI") ("Exhibit F"). Exhibit F included the following disclaimer at the bottom of page two:

> **BANKRUPTCY NOTICE**: IF YOU ARE IN BANKRUPTCY OR IF YOUR OBLIGATION TO REPAY THIS LOAN WAS DISCHARGED IN BANKRUPTCY, THIS INFORMATIONAL NOTICE IS NOT AN ATTEMPT TO COLLECT A DEBT.

A letter dated February 12, 2013, from the Debtor's Attorney was received by Green Tree containing Exhibit F and notifying Green Tree that its correspondence with the Debtor was in violation of the automatic stay and that any further actions would be considered an act of collection ("Exhibit G").

A notice dated February 14, 2013, from Green Tree was received by the Debtor giving the Debtor options to avoid foreclosure by opting for a mortgage modification or leaving the home by way of short sale or deed-in-lieu of foreclosure. ("Exhibit H"). Exhibit H included the following disclaimer at the top of page one:

> **THIS INFORMATIONAL NOTICE IS NOT AN ATTEMPT TO COLLECT A DEBT. IF YOU ARE CURRENTLY IN BANKRUPTCY OR YOUR ACCOUNT WAS DISCHARGED IN BANKRUPTCY WITHOUT REAFFIRMATION, THE SERVICER IS NOT ATTEMPTING TO COLLECT OR RECOVER THE DEBT AS YOUR PERSONAL LIABILITY** ("DISCLAIMER #1").

A notice dated February 14, 2013, from Green Tree was received by the Debtor notifying the Debtor that she may be eligible for a loan modification offered by Fannie Mae and setting forth a three month trial plan ("Exhibit I"). Exhibit I included DISCLAIMER #1 at the top of page one.

A notice dated February 25, 2013, from the Debtor was received by Green Tree notifying the Debtor that Green Tree had not received an insurance premium bill from the Debtor's insurance company for the Property and that, without a premium bill, Green Tree was unable to pay the insurance premium and Debtor's policy may cancel for non-payment ("Exhibit J"). Exhibit J included the following disclaimer at the top of page one:

> **THIS INFORMATIONAL NOTICE IS NOT AN ATTEMPT TO COLLECT A DEBT. THE CREDITOR IS ONLY EXERCISING ITS RIGHTS UNDER THE SECURITY AGREEMENT AS ALLOWED BY LAW. IF YOUR ACCOUNT HAS BEEN DISCHARGED IN BANKRUPTCY WITHOUT A REAFFIRMATION, THE CREDITOR IS NOT ATTEMPTING TO COLLECT OR RECOVER THE DISCHARGED DEBT AS YOUR PERSONAL LIABILITY** ("DISCLAIMER #2").

A letter dated March 27, 2013, from Green Tree was received by the Debtor indicating that Green Tree had not received a response in regard to its offer of loss mitigation assistance despite attempting to contact the Debtor on February 15, 2013, February 21, 2013, and March 20, 2013 ("Exhibit L"). Exhibit L included DISCLAIMER #1 at the top of page one.

A letter dated March 28, 2013, from the Debtor's Attorney was received by Green Tree containing Exhibit B, the Debtor's Statement of Intention to surrender the Property, and Exhibit K, the Discharge of the Debtor. The letter stated that Green Tree's mailings to the Debtor constitute a willful violation of the discharge injunction ("Exhibit M").

The Monthly Informational Statement dated April 11, 2013, from Green Tree was received by the Debtor and contained a "Due Date: 05/01/2013 Total Due: $21,052.21" with a remittance address of: Green Tree, P.O. Box 94710, Palatine, IL 60094-4710, and stated "[a] late charge will be assessed if payment is not received within 15 days after the due date listed above." ("Exhibit N").

Exhibit N also had a payment coupon that said "Detach and return this portion with remittance." In the middle portion of Exhibit N was a disclaimer as follows:

> **THIS IS NOT A BILL. THIS STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY.** If you were an obligor on this account prior to the filing of a Chapter 7 bankruptcy**,** and you have received a discharge, and if the debt was not reaffirmed in the bankruptcy case, Green Tree is exercising only its rights under the security agreement as allowed by law.  Green Tree is not attempting any act to collect or recover the discharged debt as your personal liability. If the above amount is not received by the stated date, Green Tree may exercise its right to seek possession of the collateral ("DISCLAIMER #3").

DISCLAIMER #3 was also located in the middle of the payment coupon in Exhibit N.

A letter dated April 19, 2013, from Green Tree was received by the Debtor assigning an account representative to the Debtor ("Exhibit O"). Exhibit O included DISCLAIMER #1 at the top of page one.

A notice dated April 25, 2013, from Green Tree was received by the Debtor indicating that the Debtor's account had been turned over to an attorney to commence foreclosure proceedings ("Exhibit P"). Exhibit P included DISCLAIMER #1 at the top of page one.

A letter dated July 2, 2013, from Green Tree was received by the Debtor notifying the Debtor that repair expenses in the amount of $147.64 were being assessed to her account ("Exhibit Q"). Exhibit Q included the following disclosure at the bottom of page one: "This communication is from a debt collector. It is an attempt to collect the debt, and any information obtained will be used for that purpose."

A letter dated July 19, 2013, from the Debtor's Attorney was received by Green Tree containing Exhibit K, the Discharge of the Debtor, and stating that further correspondence mailed to the Debtor will constitute a willful violation of the Discharge of the Debtor ("Exhibit R").

A letter dated August 2, 2013, from Green Tree was received by the Debtor notifying the Debtor that repair expenses in the amount of $87.64 were being assessed to her account ("Exhibit S"). Exhibit S included the following disclosure at the bottom of page one: "This communication is from a debt collector. It is an attempt to collect the debt, and any information obtained will be used for that purpose."

A letter dated August 8, 2013, from Hutchens, Senter, Kellam and Pettit, P.A. was received by the Debtor informing the Debtor that Green Tree had elected to proceed with a foreclosure action and included a statement required under the terms of N.C. Gen. Stat. §45-21.16(c)(5a), of the total amount of the principal and interest due under the Note as of the date of the letter ($190,696.71), the daily interest charge ($32.49), the expenses Green Tree contends are owed ($7,939.22), and the total amount of credits Green Tree claims are owed to the Debtor ($0.00) ("Exhibit T"). Exhibit T included the following disclaimer at the bottom of page two:

> **IF YOU ARE UNDER THE PROTECTION OF THE BANKRUPTCY COURT OR HAVE BEEN DISCHARGED AS A RESULT OF A BANKRUPTCY PROCEEDING, THIS NOTICE IS GIVEN TO YOU PURSUANT TO STATUTORY REQUIREMENT AND FOR INFORMATIONAL PURPOSES AND IS NOT INTENDED AS AN ATTEMPT TO COLLECT A DBT OR AS AN ACT TO COLLECT, ASSESS, OR RECOVER ALL OR ANY PORTION OF THE DEBT FROM YOU PERSONALLY.**

A letter dated December 23, 2013, from Green Tree was received by the Debtor informing the Debtor that, because of the lack of evidence the Debtor had obtained hazard insurance on the Property, Green Tree bought insurance on the Property and added the cost to the Debtor's mortgage loan account ("Exhibit U"). Exhibit U included the following disclaimer on the top of page two:

> **THIS INFORMATIONAL NOTICE IS NOT AN ATTEMPT TO COLLECT A DEBT. INSTEAD, IT IS A LEGALLY REQUIRED**

> **NOTICE OF THE CREDITOR'S RIGHT TO PLACE INSURANCE ON THE COLLATERAL TO PROTECT ITS SECURITY INTEREST AGAINST UNINSURED LOSS. THE CREDITOR IS ONLY EXERCISING ITS RIGHTS UNDER THE SECURITY AGREEMENT AS ALLOWED BY LAW. IF YOUR ACCOUNT HAS BEEN DISCHARGED IN BANKRUPTCY WITHOUT REAFFIRMATION, THE CREDITOR IS NOT ATTEMPTING TO COLLECT OR RECOVER THE DISCHARGED DEBT AS YOUR PERSONAL LIABILITY** (DISCLAIMER #4).

A letter dated January 28, 2014, from Green Tree was received by the Debtor stating that "[t]his is your **second and final** notice that our records show that your hazard insurance expired or cancelled" and because hazard insurance is required on the Property, Green Tree plans to buy insurance on the Property for an estimated cost of $2,778.00 per year. ("Exhibit V"). Exhibit V included DISCLAIMER #4 at the top of page two.

At the hearing, the Debtor testified that she is seventy-two (72) years of age and that the continuous written communications, collection efforts, and harassment by Green Tree caused her significant stress, anxiety, and emotional harm. Specifically, the Debtor testified that she often cried when she received correspondence from Green Tree. Further, Green Tree's actions have caused her to lose sleep and not eat well. On one occasion, the Debtor was unable to go to work because she was so upset about receiving Exhibit N, the Monthly Informational Statement from Green Tree, which contained a "Due Date: 05/01/2013 Total Due: $21,052.21" with a remittance address and stated "[a] late charge will be assessed if payment is not received within 15 days after the due date listed above." The Debtor said that she moved from the Property to put the bankruptcy behind her. The Debtor stated that she lives in fear that Green Tree will take further legal action to collect. She often thinks she wasted money by filing the Chapter 7 bankruptcy to receive a fresh start.

## DISCUSSION

The Debtor seeks sanctions and attorney fees for willful violation of the automatic stay pursuant to 11 U.S.C § 362(k) and violation of the discharge injunction.

Section 362(a) of the Bankruptcy Code imposes a stay on "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of a case under" Title 11. 11 U.S.C. § 362(a)(6). The Bankruptcy Code also provides that any "individual injured by any willful violation of a stay provided by this section shall recover actual damages . . . and in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362 (k)(1).

This Court has held "willfulness does not refer to the intent to violate the automatic stay, but the intent to commit the act which violates the automatic stay." *Lofton v. Carolina Fin. LLC (In re Lofton)*, 385 B.R. 133, 140 (Bankr. E.D.N.C. 2008) (citing *Citizens Bank v. Strumpf*, 37 F.3d 155 (4th Cir.1994), *rev'd on other grounds* 516 U.S. 16, 11 (1995)). Furthermore, "[i]f the creditor intentionally acts and its actions violate the automatic stay, the creditor's acts are willful." *In re Jones*, No. 06-00380-8-RDD, at 3 (Bankr. E.D.N.C. June 27, 2007).

A discharge in a bankruptcy case "operates as an injunction against . . . an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . ." 11 U.S.C. § 524(a)(2). The appropriate remedy for violation of the discharge injunction is a contempt action. *Almond v. Ford Motor Co. (In re Almond)*, 2007 WL 1345224 at *3 (Bankr. M.D.N.C. 2007). Section 524(a) may be enforced through the court's contempt power under 11 U.S.C. § 105(a). *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002).

Section 105(a) provides:

[t]he court may issue any order, process, or judgment that is necessary or

> appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Section 105 allows a bankruptcy court to enter sanctions for abuse of judicial process. *In re Volpert*, 110 F.3d 494, 501 (7th Cir. 1997); *In re Rimsat, Ltd.*, 229 B.R. 914, 921 (Bankr. N.D. Ind. 1998); *Knepper v. Skekloff*, 154 B.R. 75, 80 (N.D. Ind. 1993).

> To establish civil contempt, the movant must show by clear and convincing evidence: (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's "favor"; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . that [the] movant suffered harm as a result.

*In re Adams*, 2010 WL 2721205 at *2 (Bankr. E.D.N.C.), *aff'd*, Case No. 5:10-CV-340-BR (E.D.N.C. Jan. 24, 2011) (citing Ashcraft *v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) *aff'd*, Case No. 5:10-CV-340-BR (Jan. 24, 2011)).

Here, Green Tree had knowledge of the bankruptcy petition filed on November 29, 2012, and the Discharge of Debtor docketed on March 7, 2013 (Exhibit K). The discharge was an Order of the Court in the Debtor's favor because it provided for a discharge under 11 U.S.C. § 727.

Based upon the record in this case and the evidence presented at the hearing, the Court makes the following findings:

Green Tree did not willfully violate the automatic stay when it sent the Debtor Exhibit D, the offer to enter into a Reaffirmation Agreement, because the transmission of a proposed reaffirmation agreement is an allowed activity authorized by 11 U.S.C. §524(c). *Petruso v. Ford Motor Credit Co.*, 233 F.3d 417 (6th Cir. 2000); *Cox v. Zale Delaware, Inc.*, 239 F.3d 910 (7th Cir. 2001); *see also*,

9

*Carter v. B-Line, LLC, (In re Carter)*, AP No. 11-00069-8-RDD (Bankr. E.D.N.C. February 24, 2012) (relying on the cases cited *supra* to find that the solicitation of a reaffirmation agreement is in part, not an attempt to collect a debt with respect to North Carolina law regulating debt collection).

Exhibit F, the PMI letter; Exhibit H, the notice of foreclosure avoidance options; Exhibit I, the notice of loan modification eligibility; Exhibit J, the notice of insurance bill deficiency; Exhibit L, the loss mitigation assistance letter; Exhibit P, the notice of commencement of foreclosure; Exhibit T, the letter required under N.C. Gen. Stat. §45-21.16(c)(5a); Exhibit U, the Property insurance purchase letter; and Exhibit V, the Property insurance cost letter, neither violate the automatic stay nor the discharge injunction because each exhibit either contained a disclaimer, demanded no payment, or was a communication required by federal or state law or regulation.

Exhibit N, the Monthly Informational Statement from Green Tree, contained the following disclaimer:

> **THIS IS NOT A BILL. THIS STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY.** If you were an obligor on this account prior to the filing of a Chapter 7 bankruptcy, and you have received a discharge, and if the debt was not reaffirmed in the bankruptcy case, Green Tree is exercising only its rights under the security agreement as allowed by law. Green Tree is not attempting any act to collect or recover the discharged debt as your personal liability. *If the above amount is not received by the stated date, Green Tree may exercise its right to seek possession of the collateral (emphasis added)*. (DISCLAIMER #3).

Exhibit N and the italicized language above in DISCLAIMER #3 mark a turning point in Green Tree's communications and this case. Exhibit N was sent after three written requests from the Debtor's Attorney to cease the correspondence, notices, insurance letters, etc., as the Debtor was surrendering the Property and had no interest in keeping the Property. (Exhibit B, Statement of Intention, and the three written requests, Exhibits E, G, and M.) Further, nowhere in Section 205 of

the "Fannie Mae Single Family 2012 Servicing Guide" submitted to the Court by Counsel for Green Tree is there a requirement that such an informational statement be sent. (See Fannie Mae Single Family 2012 Servicing Guide, March 14, 2012.) In spite of the disclaimers, Exhibit N is nothing more than a cleverly disguised form meant to induce payment of funds to Green Tree. If Green Tree was not trying to induce payment of funds from the Debtor by sending Exhibit N, why would Green Tree have provided a "Due Date: 05/01/2013 Total Due: $21,052.21" with a remittance address of: Green Tree, P.O. Box 94710, Palatine, IL 60094-4710, stating that "[a] late charge will be assessed if payment is not received within 15 days after the due date listed above"? Therefore, Green Tree willfully violated the discharge injunction when it sent Exhibit N to the Debtor.

      Green Tree willfully violated the discharge injunction when it sent the Debtor Exhibit O, the letter assigning the Debtor an account representative, on the heels of Exhibit N. Green Tree's inclusion of DISCLAIMER #1 in Exhibit O does not negate the ultimate intent of the letter. Green Tree was well aware the Debtor had no desire to keep the Property. Why would Green Tree assign an account representative after Green Tree was informed at least three times by the Debtor's Attorney the Debtor was not keeping the Property?

      Because Exhibit Q charges $147.64 to the Debtor's account for repair expenses and states that the purpose of the letter was to collect a debt, Green Tree willfully violated the discharge injunction when it sent Exhibit Q to the Debtor.

      Even after the Debtor's Attorney sent Exhibit R, a fourth letter (dated July 19, 2013) to Green Tree advising it not to send any more notices to the Debtor, Green Tree sent Exhibit S charging $87.64 to the Debtor's account for repair expenses and stating that the purpose of the letter was to collect a debt. Therefore, Green Tree willfully violated the discharge injunction when it sent Exhibit

S to the Debtor.

With the four warning letters (Exhibits E, G, M, and R), the Chapter 7 Individual Debtor's Statement of Intention stating that the Debtor was surrendering the Property (Exhibit B), the Monthly Informational Statement stating total amount due was $21,052.21 (Exhibit N), and the damage repair letters stating that the purpose of the letters was to collect a debt (Exhibits Q and S), the Debtor has proven, by a preponderance of the evidence, a willful violation of the discharge injunction. The Court cannot ignore the cumulative effect and impact of all Green Tree communications when the Debtor had clearly communicated to Green Tree, on numerous occasions, her intentions to surrender the Property.

Based on these findings, the Court concludes that Green Tree is in willful contempt of the discharge injunction entered by this Court on March 7, 2013. Therefore, the Motion to hold Green Tree in willful contempt of the discharge injunction is **GRANTED.**

The Court awards attorney fees to J. Allen Murphy, Attorney at Law, in the amount of $3,500.00. The Court awards actual damages in the sum of $1,500.00 payable to Rebecca Ann Youngkin to compensate the Debtor for her mental distress, anxiety, travel expense, and appearance in Court. The Court further imposes civil sanctions against Green Tree Servicing, LLC for willful violation of the discharge injunction in the amount of $2,500.00 to be paid to the Clerk of the U.S. Bankruptcy Court for the Eastern District of North Carolina. Said attorney's fees, damages, and sanctions shall be paid within twenty-one (21) days of the date of this Order.

**SO ORDERED.**

**END OF DOCUMENT**